## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE UNITED STATES FOR THE USE AND BENEFIT OF DIVERSIFIED BUILDING SYSTEMS LLC, a Florida limited liability company,<br><br>　　　Plaintiff,<br><br>v.<br><br>PENN CONSTRUCTION GROUP, INCORPORATED, a Texas for-profit corporation; KORTE CONSTRUCTION COMPANY, a Missouri for-profit corporation; and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut insurance corporation,<br><br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　Case No. CIV-22-801-D<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

Before the Court is the Motion for Partial Summary Judgment [Doc. No. 51] filed by Plaintiff, the United States for the Use and Benefit of Diversified Building Systems, LLC. Defendant, Penn Construction Group, Inc. (Penn), filed a response [Doc. No. 57], to which Plaintiff replied [Doc. No. 59]. [1] The matter is fully briefed and at issue.

## BACKGROUND

This litigation stems from a construction project to build a fuel maintenance hangar and depot maintenance hangar at Tinker Air Force Base. Korte Construction Company was

---

[1] Initially, Plaintiff also moved for summary judgment on its Miller Act claim against Defendants Korte and Travelers [Doc. No. 51]. Thereafter, Plaintiff reached a settlement as to all claims against Korte and Travelers [Doc. No. 74]. Accordingly, the only issue remaining is Plaintiff's motion for partial summary judgment for its claims against Penn.

awarded the prime contract, and Korte hired Penn as a first-tier subcontractor. Penn then entered into a verbal agreement with Plaintiff to provide skilled labor services for the project.

The verbal agreement between Plaintiff and Penn was negotiated by Plaintiff's President, Tom Vermeesch, and Penn's Build Director, Michael Luessi. As alleged by Plaintiff, the verbal agreement for the Tinker project was identical to a previous verbal agreement between Penn and Plaintiff for a federal construction project at the Mayport naval facilities in Florida. Plaintiff asserts that the following terms were the only terms governing the subcontract for the Tinker project: Plaintiff would pay its skilled workforce at pre-existing hourly rates, plus overtime and standard benefits, based on the workers' timesheets; Penn would be charged a flat $65 per hour worked; and Penn would pay Plaintiff upon receiving invoices.

The scope of the subcontract between Plaintiff and Penn is disputed. Plaintiff alleges that the original scope of the Tinker project was for Plaintiff's crews to install IMP panels at the fuel hangar. However, Plaintiff asserts that Penn then expanded the scope of Plaintiff's services and directed Plaintiff's workers to: repair, rebuild, and reinstall significant parts of the fuel hangar; take over the remaining framing and roofing needed for the depot hangar; and then install IMP panels at both hangars. According to Plaintiff, all work performed by Plaintiff's crews was supervised by Penn's Construction Manager, Don Harrold, and Penn's Superintendent, David Cox.

Penn alleges that Mr. Luessi and Mr. Vermeesch met in person on May 25, 2021, and agreed to additional terms. According to Penn, Plaintiff agreed "on payment of $65.00

per manhour with a 4.5-man crew achieving production at the standard installation rates of 25 to 30 metal wall panels per day and 3,000 roof squares per day, and that payment would be reduced if the agreed-to production levels were not met." [Doc. No. 57, at 10]. Penn further alleges that Plaintiff also agreed to provide supervision for its own crews.

Plaintiff alleges that Penn ultimately stopped paying Plaintiff's invoices by mid-November of 2021. After Penn asked Korte for assistance in getting payment, Penn paid a portion of the outstanding invoices for Plaintiff's work on the depot hangar, but refused to pay for Plaintiff's services related to the panel installation at the fuel hangar. Penn's refusal to pay Plaintiff's invoices caused Plaintiff to pull its crews from the Tinker project in February of 2022. Plaintiff contends that Mr. Luessi (Penn's Build Director) had not been forthcoming to Korte about the "true expanded scope of work performed by [Plaintiff's] skilled crews and had been instead claiming that [Plaintiff's] crews had *only* done the IMP panel installation at the fuel hangar…." [Doc. No. 51, at 3].

Six weeks after Plaintiff removed its crews from the Tinker project, Mr. Luessi sent Mr. Vermeesch a text message purporting to release Plaintiff from the project. Plaintiff alleges that Mr. Luessi also attempted to modify the existing terms of Plaintiff's verbal agreement with Penn "by stating for the first time that the verbal agreement made in June [of] 2021 was to pay [Plaintiff's] laborers not only 'the $65 per hour rate' but that the rate would be adjusted '*using an industry standard install time*'…." [Doc. No. 51, at 13].

Plaintiff alleges that its invoices for the Tinker project remain unpaid in the amount of $541,736.99. Plaintiff filed suit against Penn for breach of contract, quantum meruit, and unjust enrichment. With the present motion, Plaintiff seeks summary judgment on its

quantum meruit and unjust enrichment claims against Penn. In response, Penn contends that Plaintiff cannot obtain summary judgment on its quasi-contract claims because 1) an express contract exists between the parties; and 2) the terms of the express contract are in dispute.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id.* at 255. The inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## DISCUSSION

### I.    Motion to Strike Exhibits to Penn's Summary Judgment Response

For the reasons set forth in the Court's previous Order [Doc. No. 75] the Court construes Plaintiff's Motion to Strike [Doc. No. 58] as Plaintiff's objection to various exhibits attached to Defendants' responses to Plaintiff's motion for partial summary

4

judgment. Specific to Penn, Plaintiff objects to Exhibits D, E, F, I, and H[2] to the Declaration of Michael Luessi, attached to Penn's response as Exhibit No. 1 [Doc. No. 57-1].

Exhibit D is an e-mail from Plaintiff's President, Mr. Vermeesch, to Penn's management, Don Harrold, David Cox, and Michael Luessi [Doc. No. 57-2, at 33-34]. Attached to Mr. Vermeesch's e-mail is an October 20, 2021 letter from Nucor Buildings Group, notifying Mr. Vermeesch that Plaintiff was successful "in completing all requirements for approval and certification to supervise the installation of products" presumably needed for the Tinker project. *Id.* at 35.

Exhibit E is a series of e-mails between Korte and Penn employees, to include Mr. Luessi, in which they discuss Plaintiff's certification approval and Korte's request that Penn provide "something on [Penn's] letterhead stating [Plaintiff] is [Penn's] second tier subcontractor…." *Id.* at 36-40. Attached to Exhibit E is the certification letter from Nucor and a November 3, 2021 letter from Penn referring to Plaintiff as its subcontractor. *Id.* at 41-42.

Exhibit F is a November 10, 2021 e-mail from Penn's Construction Manager, David Cox, to Mr. Vermeesch, in which Mr. Cox raises various issues with Plaintiff's "slow rate of progress," inexperienced work crews, and Plaintiff's alleged promise that "there was to be lead men onsite from the start." *Id.* at 43-44. Attached to Mr. Cox's e-mail are two site pictures showing "progress on the IMP installation" for both hangars. *Id.* at 45-46.

---

[2] Plaintiff's objection to Exhibit H has since been resolved. [Doc. No. 73, at 3].

Finally, Exhibit I appears to be a text message sent on February 16, 2022, from Mr. Luessi to Mr. Vermeesch, releasing Plaintiff's work crews from the Tinker project. *Id.* at 70.

Plaintiff argues that, because Exhibits D, E, F, and I were not produced in discovery, Penn should not be permitted to rely on them for purposes of summary judgment or at trial. *See* FED. R. CIV. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). When considering whether to exclude such evidence, courts consider "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *HCG Platinum, LLC v. Preferred Product Placement Corp.*, 873 F.3d 1191, 1200 (10th Cir. 2017).

Plaintiff argues it was prejudiced by Penn's failure to produce Exhibits D, E, F, and I in discovery. However, as Exhibits D, F, and I were e-mail or text communications sent to or from Plaintiff's President, Plaintiff has not adequately explained how it did not have equal possession of, or access to, these communications outside the discovery process. The Court finds that Plaintiff has not been prejudiced by Penn's failure to produce Exhibits D, E, F, and I in discovery. The Court further finds that allowing Penn to rely on the subject exhibits will not disrupt the trial, which has yet to be set. Finally, the Court is not convinced that Penn's failure to produce the foregoing exhibits in discovery was willful or done in

6

bad faith. For these reasons, the Court will consider Exhibits D, E, F, and I in deciding Plaintiff's motion for partial summary judgment.

## II.     Quantum Meruit and Unjust Enrichment

Plaintiff moves for summary judgment on its quantum meruit and unjust enrichment claims against Penn. The doctrine of quantum meruit provides that "[w]here a person performs services without a written contract, the law implies an agreement to pay what is reasonable, meaning thereby what he reasonably deserves." *McCurdy Grp. v. Am. Biomedical Grp., Inc.*, 9 F. App'x 822, 827 (10th Cir. 2001) (unpublished) (quotations and citation omitted). For this claim, Plaintiff must establish that "(1) Plaintiff rendered valuable services to Defendant with a reasonable expectation of being compensated, (2) Defendant knowingly accepted the benefit of the services, and (3) Defendant would be unfairly benefited by the services if no compensation were paid to Plaintiff." *Big Hunt Media, Inc. v. Smith & Wesson Corp.*, Case No. CIV-18-299-R, 2018 WL 3625842, at *3 (W.D. Okla. July 30, 2018) (citing No. 23.10, OUJI-CIV 2d). Even where an express contract exists, "Oklahoma law does not appear to preclude a plaintiff from recovering under a quantum meruit claim … as long as the quantum meruit claim involved obligations outside the scope of the express contract." *McCurdy Grp.*, 9 F. App'x at 827.

Unjust enrichment "arises 'from the failure of a party to make restitution in circumstances where it is inequitable,' or one party holds property 'that, in equity and good conscience, it should not be allowed to retain.'" *Am. Biomedical Grp., Inc. v. Techtrol, Inc.*, 2016 OK 55, ¶ 27, 374 P.3d 820, 828 (citing *Harvell v. Goodyear Tire and Rubber Co.*, 2006 OK 24, ¶ 18, 164 P.3d 1028, 1035). "[A] party is not entitled to pursue a claim for

unjust enrichment when it has an adequate remedy at law for breach of contract." *Id.* (citing *Krug v. Helmerich & Payne, Inc.*, 2015 OK 74, ¶ 6, 362 P.3d 205, 209); *see also Summer Oaks Realty SPE LLC v. Minera, LLC*, Case No. CIV-20-1223-R, 2021 WL 6101882, at *3 (W.D. Okla. June 10, 2021) (citation omitted) (finding an adequate remedy at law precluded a plaintiff's unjust enrichment claim because the "allegations underlying [the] unjust enrichment claim state 'no separate obligation or duty' aside from the obligations and benefits outlined in the contracts between [the parties].").

Plaintiff argues that there are no material facts in dispute as to Plaintiff's right to quantum meruit due to the unjust enrichment received by Penn. Plaintiff alleges that "Penn expanded the work previously contemplated for [Plaintiff's] teams" and that Plaintiff "perform[ed] all the services requested by Penn and Korte for the Fuel Hangar Work and Depot Hangar Work and submitted invoices for that work…." [Doc. No. 51, at 27]. For these reasons, Plaintiff asks that the Court award it restitution in the total unpaid amount of $541,736.99.

In response, Penn argues that Plaintiff's unjust enrichment and quantum meruit claims are barred by the express contract rule. Penn alleges various disputed material facts with respect to Plaintiff's quasi-contract claims, to include 1) the exact terms of the parties' verbal contract; 2) the quality and value of Plaintiff's services; and 3) whether Plaintiff's claims against Penn include obligations outside the scope of the parties' express contract. Plaintiff alleges the only terms of the verbal contract between Plaintiff and Penn were that Plaintiff would provide a skilled workforce to Penn, to work under Penn's direct supervision, and that Penn would pay a flat rate of $65 per hour after being invoiced by

8

Plaintiff [Doc. No. 51, at 6-7]. However, Penn alleges additional terms such as the requirements that Plaintiff furnish a "4.5-man crew" and "achieve production at the standard installation rate of 25 to 30 metal wall panels per day and 3,000 roof squares per day." [Doc. No. 57, at 17]. Penn further alleges that Plaintiff was to supervise its own crews; that the $65 hourly rate could be reduced based on installation rate; and that Plaintiff failed to keep up with the agreed upon installation rate.

Viewing all reasonable inferences in favor of Penn, the Court finds that Plaintiff has not established its entitlement to summary judgment on its claims for quantum meruit or unjust enrichment. As stated herein, where there is an express contract between the parties, unjust enrichment and quantum meruit may be sought only where a plaintiff's claim involves obligations outside the scope of the express contract. The Court agrees with Penn that Plaintiff has failed to establish that its unjust enrichment and quantum meruit claims are based on services Plaintiff provided that were outside the scope of the parties' express contract. Penn has shown a genuine dispute of material fact as to the terms of the parties' express contract, rendering summary judgment improper.

## CONCLUSION

For these reasons, Plaintiff's Motion for Partial Summary Judgment [Doc. No. 51] is **DENIED**.

**IT IS SO ORDERED** this 23rd day of January, 2024.


TIMOTHY D. DeGIUSTI
Chief United States District Judge